BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Eric C. Lauritsen (State Bar No. 301219)
  elauritsen@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697

Attorneys for Plaintiff
Atari Interactive, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TARGET CORPORATION, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR:** <br><br> **(1) TRADEMARK INFRINGEMENT AND COUNTERFEITING [15 U.S.C. §1114];** <br> **(2) COPYRIGHT INFRINGEMENT [17 U.S.C. §§101 et seq.];** <br> **(3) FALSE DESIGNATION OF ORIGIN [15 U.S.C. §1125(a)];** <br> **(4) TRADEMARK AND TRADE DRESS DILUTION [15 U.S.C. §1125(c)];and** <br> **(5) COMMON LAW UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Atari Interactive, Inc. ("Atari"), as and for its complaint against defendant Target Corporation ("Target"), hereby alleges as follows:

### PARTIES

1. Atari is a Delaware corporation with its principal place of business in New York, New York. Through contractual agreements and extensive and continuing use, Atari owns the rights to the intellectual property library of the well-known Atari video game brand.

2. Atari is informed and believes, and thereon alleges, that Target is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because the action arises under the federal Copyright Act and Lanham Act. See 17 U.S.C. §§101, *et seq.*; 15 U.S.C. §§1051, *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. sections 1367 and 1338(b).

4. This Court has personal jurisdiction over Target because Target continuously and systematically conducts business in California. In addition, Atari is informed and believes and thereon alleges that Target engaged in at least some of the infringing conduct described herein in California.

5. Venue in this district is proper under 28 U.S.C. section 1391 because Target is subject to personal jurisdiction here and Atari has suffered injury here.

### GENERAL ALLEGATIONS

**A.    *Pong* is an Iconic Atari Video Game.**

6. Atari is one of the most famous video game brands in history. Founded in the early 1970s in California, Atari became *the* pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing (a) home video game consoles – e.g., the Atari 2600 – that set new standards in

design and function, and (b) a series of hit games – e.g., *Breakout, Asteroids*, and as most relevant here, *Pong*.

7. *Pong* is generally considered to be the first commercially successful video game in history. Indeed, industry experts have gone so far as to say that *Pong* launched the now multi-billion dollar modern day video game industry. Although visually and functionally simple by today's gaming standards, the look and feel of *Pong* is immediately recognizable. Below is a screenshot from the game.



8. In light of its historical significance and fame, *Pong* has been featured extensively and in myriad ways throughout its now nearly 50-year existence.

9. Atari created, distributed, licensed, and/or sold various sequel or derivative games based on the original *Pong*.

10. *Pong* is part of permanent collections at the Smithsonian Institute and the World Video Game Hall of Fame, the latter of which selected *Pong* as one of six games inducted in its inaugural class.

11. *Pong* has been featured on popular television shows and commercials.

12. Atari recently licensed the *Pong* imagery for use in a television commercial for a well-known alcoholic beverage brand.

13. Atari currently licenses, markets, and/or sells a variety of products bearing the *Pong* trademark and imagery.

14. Below are a couple examples of officially licensed Atari *Pong* apparel

products being sold nationwide.




15. Below is a picture of Atari's official *Pong* table game that is currently being sold nationwide.



16. To help protect the valuable *Pong* brand from infringement, Atari duly registered the PONG trademark with the United States Patent and Trademark Office in several categories, including for computer game programs (Reg. No. 2,611,782 dated August 27, 2002).

17. Atari is also the owner of copyright registrations for various iterations of the *Pong* game, including the visual elements thereof.

18. Through extensive and continuous nationwide promotion and sales, unsolicited press, and word-of-mouth for nearly 50 years, Atari owns common law

rights in the names and graphics associated with *Pong* and the game's overall look and feel.

### B. Target Continues to Knowingly Infringe Upon Atari's Intellectual Property Rights by Featuring a Game Called *Foot Pong* in Dozens of Target Stores.

19. Target is one of the largest and most frequented retailers in the United States.

20. On information and belief, Target created or authorized the creation of an imitation video game called *Foot Pong* that Target then installed in dozens of its stores nationwide.

21. Target's *Foot Pong* is an obvious, deliberate copy of Atari's original *Pong* game. Visually, Target's *Foot Pong* is virtually identical in overall look and feel to the original *Pong*. Practically, the only difference between *Foot Pong* and *Pong* is that, in the former, players use their feet rather than hands and the game is projected onto the floor rather than through a television or mobile device screen. Below is a screen shot of Target's *Foot Pong* game.



22. On information and belief, representatives of Target internally and publicly refer to the game as *Pong* or *Foot Pong*.

23. Consumers regularly refer to the game as *Pong* or *Foot Pong*.

24. On information and belief, Target has been making *Foot Pong* available to its customers for promotional purposes intended to encourage customers to spend more time (and ultimately money) in its stores. On information and belief, Target also uses *Foot Pong* to benefit its reputation and goodwill with consumers.

25. Target's infringement of Atari's intellectual property rights is willful. Target knew that Atari owned the intellectual property rights in *Pong*. Indeed, Target has been selling authentic, officially licensed Atari shirts, including shirts bearing the PONG trademark. Below is an example of Target offering for sale an officially licensed Atari PONG product.



26. Nevertheless, when it came to the *Foot Pong* game, Target neither sought nor obtained Atari's permission.

27. By letter, Atari asked Target to cease and desist using *Foot Pong* in its

1  stores or otherwise.  A lawyer representing Target explained that Target would not
2  cease and desist, expressly stating that Target would not deviate from its planned
3  use through March 2019.  Target's lawyer went on to state that Target "trust[s] you
4  will agree to treat the matter as closed."

5      28.    Atari does not consider Target's ongoing willful infringement as a
6  matter that is "closed."

7      29.    Target has profited from *Foot Pong* by attracting customers to Target
8  stores, keeping customers in Target stores where they spend additional money, and
9  generating positive word-of-mouth and goodwill for Target.

10      30.    Target's infringement has harmed Atari, including by diluting the
11  PONG intellectual property and causing Atari to lose potential license fees from
12  both Target and third parties.

13  **FIRST CLAIM FOR RELIEF**
14  **(Trademark Infringement and Counterfeiting)**

15      31.    Atari re-alleges and incorporates herein by reference each and every
16  allegation set forth above.

17      32.    Atari is the owner of the registered PONG trademark for the category
18  of goods on which Target is using the trademark.

19      33.    The PONG trademark is a valid, protectable mark.

20      34.    Target is marketing, creating, displaying, distributing, and/or profiting
21  from materials bearing (or made available under) the PONG trademark or nearly
22  identical variations thereof.

23      35.    Target's use of the PONG trademark is likely to cause confusion
24  among ordinary customers as to the source or affiliation of the *Foot Pong* game.

25      36.    Atari has not consented to Target's use of the PONG trademark.

26      37.    Target infringed upon the PONG trademark and engaged in trademark
27  counterfeiting willfully.

28      38.    As a proximate result of the unfair advantage accruing to Target from

its unauthorized use of the PONG trademark and deceptive use of Atari's goodwill in the *Pong* name, (i) Target has made substantial sales and profits in amounts to be established according to proof; and (ii) Atari has been damaged and deprived of substantial sales and profits, as well as of the value of its trademarks as commercial assets in amounts to be established according to proof.

39. Unless restrained by the Court, Target will continue to infringe Atari's trademarks. Pecuniary compensation alone will not afford Atari adequate relief for the damage to its trademarks and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of *Foot Pong*.

40. Target's acts have been committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Atari and its products. Pursuant to 15 U.S.C. section 1117, Atari is, therefore, entitled to recover three times its actual damages or three times Target's profits, whichever is greater, together with its attorneys' fees. Atari is entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing materials in Target's possession.

## SECOND CLAIM FOR RELIEF
### (Copyright Infringement)

41. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

42. Atari has complied in all respects with the copyright laws of the United States, 17 U.S.C. §101 et seq., and has secured the exclusive rights and privileges in and to the original expression in various copyrights for the *Pong* video game that have been duly registered with the U.S. Copyright Office.

43. Target had access to Atari's copyrighted work *Pong* as established by,

among other things, (a) the widespread availability of Atari-licensed products incorporating that work, (b) the fact that the work is well known in the industry and in the public, (c) the striking similarity between the expression used in the original Pong and Target's *Foot Pong*, and (d) the fact that Target references the game as *Pong* or *Foot Pong*.

44. Target infringed Atari's copyrights in *Pong* by advertising, marketing, creating, displaying, distributing, and profiting from products incorporating protectable expression taken from the work without Atari's permission.

45. Target infringed Atari's copyrights willfully.

46. Atari is entitled to actual damages and Target's profits in an amount to be proven at trial.

47. Alternatively, Atari is entitled to statutory damages in an amount no less than $150,000.

48. Target's acts have caused and will continue to cause irreparable harm to Atari unless restrained by this Court. Atari has no adequate remedy at law. Accordingly, Atari is entitled to an order enjoining and restraining Target and all those acting in concert with Target, during the pendency of this action and permanently thereafter, from manufacturing, distributing, marketing, offering for sale, or selling copies or substantially similar copies of works substantially similar to *Pong*, including but not limited to *Foot Pong*.

## THIRD CLAIM FOR RELIEF
### (False Designation of Origin)

49. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

50. The PONG trademark and the overall look and feel of the *Pong* game (the "Pong Trade Dress"), are inherently distinctive and have also acquired secondary meaning through extensive promotion, sales, unsolicited press, and word of mouth for over four decades.

51. The Pong Trade Dress consists of the following elements: (a) a rectangular playing field or court; (b) two vertical lines, located on the far side of each side of the court, that create "paddles" that can move only up and down; (c) a dotted line in the center of the court; (d) a small ball that can be volleyed back and forth by the paddles, but that disappears if missed by either paddle; (e) a scoreboard at the top of the court that consists of a single number on each side of the dotted line. The Pong Trade Dress is the overall look and feel of the combination of the aforementioned elements, as seen in the *Pong* video game.

52. Target is advertising, marketing, creating, displaying, distributing, and profiting from products utilizing the PONG trademark and the Pong Trade Dress or nearly identical variations thereof without Atari's authorization.

53. Target's use of the PONG trademark and the Pong Trade Dress is likely to cause confusion among ordinary consumers as to the source or affiliation of *Foot Pong*.

54. Atari has never consented to Target's use of its trademarks or trade dress in the manner described herein.

55. Target infringed upon Atari's trademarks and trade dress willfully.

56. As a proximate result of the unfair advantage accruing to Target from using similar or quasi-similar marks and trade dress and deceptively trading on Atari's goodwill, (i) Target has made substantial sales and profits in amounts to be established according to proof, and (ii) Atari has been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets in amounts to be established according to proof.

57. Unless restrained by the Court, Target will continue to infringe Atari's trademarks and trade dress. Pecuniary compensation alone will not afford Atari adequate relief for the damage to its trademarks, trade dress, and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of the infringing

game.

58. Target's acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Atari and its products. Pursuant to 15 U.S.C. section 1117, Atari is therefore entitled to recover three times its actual damages or three times Target's profits, whichever is greater, together with its attorneys' fees. Atari is also entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing materials in Target's possession.

## FOURTH CLAIM FOR RELIEF

### (Trademark and Trade Dress Dilution)

59. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

60. The PONG trademark and the Pong Trade Dress are widely recognized by the general consuming public of the United States.

61. Target's unauthorized use of the PONG trademark and the Pong Trade Dress has the effect of tarnishing and blurring the PONG trademark and the Pong Trade Dress.

62. Atari is entitled to recover damages and/or Target's profits in an amount to be determined at trial.

63. Atari is entitled to an order preliminarily and permanently enjoining Target from using its trademarks and trade dress in the future.

64. Because Target has willfully intended to cause dilution of the PONG trademark and the Pong Trade Dress, Atari is further entitled to recover its costs of suit and reasonable attorney's fees pursuant to 15 U.S.C. sections 1117 and 1125(c)(2).

## FIFTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

65. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

66. Target's unauthorized use of Atari's trademark and trade dress is likely to cause consumer confusion as to the source, origin, sponsorship, and association of Target's products.

67. Atari has been, and will continue to be, damaged and irreparably harmed by the actions of Target unless it is enjoined by this Court.

68. Target committed the foregoing acts with the intention of depriving Atari of its legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Atari's rights. Atari is therefore entitled to an award of exemplary and punitive damages, according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Atari prays for relief against Target as follows:

1. For preliminary and permanent injunctions enjoining and restraining Target, its agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with it, from:

   a. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates designs substantially similar to Atari's copyrighted works absent an express licensing agreement to the contrary; and

   b. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction any Atari trademark or trade dress absent an express licensing agreement to the contrary.

2.      For an order requiring the destruction of all of Target's infringing materials and all marketing, advertising, or promotional materials depicting or describing them;

3.      For an accounting of all profits obtained by Target in connection with the infringing game and an order that Target hold all such profits in a constructive trust for the benefit of Atari;

4.      For an award to Atari of all profits earned by Target from its infringing acts;

5.      For compensatory damages according to proof;

6.      For statutory damages of no less than $150,000 per registered copyright and no less than $2 million per registered trademark;

7.      For pre-judgment interest on all damages awarded by this Court;

8.      For reasonable attorney's fees and costs of suit incurred herein; and

9.      For such other and further relief as the Court deems just and proper.

Dated: December 28, 2018

BROWNE GEORGE ROSS LLP
   Keith J. Wesley
   Eric C. Lauritsen

By:    s/ Keith J. Wesley
           Keith J. Wesley
Attorneys for Plaintiff
ATARI INTERACTIVE, INC.

## DEMAND FOR JURY TRIAL

Atari hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: December 28, 2018

BROWNE GEORGE ROSS LLP
   Keith J. Wesley
   Eric C. Lauritsen


By:    s/ Keith J. Wesley
        Keith J. Wesley
Attorneys for Plaintiff
ATARI INTERACTIVE, INC.